UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Vapotherm, Inc.,
        Plaintiff

        v.                              Case No. 21-cv-0058-SM
                                        Opinion No. 2021 DNH 099

Clayton Santiago,
        Defendant


# O R D E R


Vapotherm, Inc. brings this action against its former
employee, Clayton Santiago, advancing several state law claims
arising out of Santiago's alleged breach of contract.  According
to Vapotherm, Santiago violated a non-solicitation agreement by
encouraging former co-workers to terminate their employment with
Vapotherm and urging them to join Santiago at his new employer:
Vero Biotech, LLC.  Santiago says he did nothing of the sort
and, despite having engaged in limited discovery and having
deposed the relevant witnesses, Vapotherm has identified scant
evidence to support its claims.  Beyond the apparent weakness in
Vapotherm's claims on the merits, Santiago asserts that this
court lacks personal jurisdiction over him and, on that basis,
he moves to dismiss all of Vapotherm's claims.

For the reasons discussed, Santiago's motion to dismiss for lack of personal jurisdiction is granted.

## Standard of Review

When personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has such jurisdiction.  See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995); Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986).  Allegations of jurisdictional facts are construed in the plaintiff's favor, see Buckley v. Bourdon, 682 F. Supp. 95, 98 (D.N.H. 1988), and if, as here, the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists.  See Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992).

Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss.  See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  See also Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) ("Although the burden of proof is light, [the plaintiff] may not rely on the mere allegations of

its complaint, but must point to specific facts in the record that support those allegations."). And, "in reviewing the record before it, a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" VDI Technologies v. Price, 781 F. Supp. 85, 87 (D.N.H. 1991) (quoting Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987)).

This court has discussed the constitutional requirements for exercising personal jurisdiction over a foreign defendant many times and that discussion need not be repeated. See, e.g., Douglas Co., Inc. v. My Brittany's LLC, No. 19-CV-1234-SM, 2020 WL 2768973 (D.N.H. May 28, 2020); D'Jamoos v. Atlas Aircraft Ctr., Inc., 669 F. Supp. 2d 167 (D.N.H. 2009). Here, it is sufficient to note that Vapotherm asserts that the court may exercise "specific" (as opposed to "general") personal jurisdiction over Santiago. See generally Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (U.S. 2011) (noting that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (citation and internal punctuation omitted). For this court to exercise specific personal jurisdiction over Santiago, Vapotherm must show that:

> (1) [the] claim <u>directly</u> arises out of or <u>relates to</u>
> the defendant's forum-state activities; (2) the
> defendant's contacts with the forum state represent a
> <u>purposeful availment</u> of the privilege of conducting
> activities in that state, thus invoking the benefits
> and protections of that state's laws and rendering the
> defendant's involuntary presence in that state's
> courts foreseeable; and (3) the exercise of
> jurisdiction is ultimately <u>reasonable</u>.  Failure to
> make any one of these showings dooms any effort to
> establish specific personal jurisdiction.

<u>Scottsdale Cap. Advisors Corp. v. The Deal, LLC</u>, 887 F.3d 17, 20

(1st Cir. 2018) (citations omitted; emphasis supplied).  <u>See</u>

<u>also</u> <u>Cambridge Literary Props. v. W. Goebel Porzellanfabrik</u>, 295

F.3d 59, 63 (1st Cir. 2002); <u>Sawtelle</u>, 70 F.3d at 1389-95

(describing the three essential jurisdictional elements as

"relatedness," "purposeful availment," and the so-called

"Gestalt factors").


     The first of those elements – "relatedness" – requires the

plaintiff "to show a demonstrable nexus between its claims and

the defendant's forum-based activities, such that the litigation

itself is founded directly on those activities."  <u>C.W. Downer &</u>

<u>Co. v. Bioriginal Food & Sci. Corp.</u>, 771 F.3d 59, 66 (1st Cir.

2014) (citation and internal punctuation omitted).  With regard

to that prong of the jurisdictional inquiry, the court employs a

slightly different analysis depending on the nature of the claim

advanced – that is, whether it sounds in tort or contract.

"[W]here the cause of action is for an alleged breach of
contract, we ask whether the defendant's activity in the forum
state was instrumental either in the formation of the contract
or its breach." Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir.
2007) (citation and internal punctuation omitted).  If the claim
sounds in tort, "we customarily look to whether the plaintiff
has established 'cause in fact (i.e., the injury would not have
occurred "but for" the defendant's forum-state activity) and
legal cause (i.e., the defendant's in-state conduct gave birth
to the cause of action).'"  Massachusetts Sch. of L. at Andover,
Inc. v. Am. Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998) (quoting
United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St.
Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).

The "purposeful availment" element of the analysis has been
described as a "rough quid pro quo" – that is, "when a defendant
deliberately targets its behavior toward the society or economy
of a particular forum, the forum should have the power to
subject the defendant to judgment regarding that behavior."
Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011).
A federal court's exercise of personal jurisdiction over a
foreign defendant "must be based on intentional conduct by the
defendant that creates the necessary contacts with the forum."
Walden v. Fiore, 571 U.S. 277, 286 (2014).  "Regardless of where

a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." Id. at 290. Consequently, the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. The cornerstones of the purposeful availment inquiry are voluntariness and foreseeability. C.W. Downer, 771 F.3d at 66.

Finally, in determining whether the exercise of personal jurisdiction over a defendant would be "reasonable," the court considers factors like: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Ticketmaster, 26 F.3d at 209. This portion of the analysis "evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Id. at 210.

**Background**

I.   The Parties and Vapotherm's Claims.

Vapotherm is a Delaware corporation with a principle place of business in Exeter, New Hampshire.  It is a publicly traded medical device manufacturing company.  Vero Biotech (Santiago's current employer and former defendant in this proceeding) is based in Atlanta, Georgia.  It is not a direct competitor of Vapotherm but, rather, it manufactures a "complementary" product.  Indeed, after Santiago joined Vero Biotech, the companies entered into an agreement "pursuant to which the parties agreed to provide products for testing purposes." Plaintiff's Memorandum (document no. 34) at 8.

Clayton Santiago is a resident of Georgia, where he has lived for roughly 30 years.  Before joining Vero Biotech, Santiago worked for Vapotherm for approximately four years, beginning in January of 2016.  In connection with that employment, Santiago signed a "Confidentiality, Non-Compete and Assignment of Inventions Agreement" with Vapotherm.  As part of that agreement, Santiago agreed "that during the period of engagement and for a period of one year thereafter, [he] will not solicit or encourage any employee of the Company to terminate his or her employment with the Company or to accept any employment with any subsequent employer with whom [Santiago]

is affiliated in any way." Amended Complaint, Exhibit 2

(document no. 34-1) at 57 (the "Non-solicitation Agreement").

It appears that Santiago signed the agreement in Georgia.[1]


Vapotherm alleges that Santiago breached the agreement

when, after resigning from his position at Vapotherm and joining

Vero Biotech, he spoke and/or met with three then-current

Vapotherm employees: Benjamin Lonsway, Kurt Wong, and Ryan

Philpot.  None of those meetings or conversations is alleged to

have taken place in New Hampshire.  None of those individuals

lives or works in New Hampshire.  Although Santiago denies it,

Vapotherm claims Santiago "solicited" those men to terminate

their employment with Vapotherm and encouraged them to join him

at his new employer.  That alleged conduct forms the basis of

Vapotherm's claims for breach of contract, intentional

interference with contractual relations, and unjust enrichment

(a claim apparently based on the notion that Santiago wrongfully

accepted his salary from Vapotherm while in breach of the

agreement, "thereby receiving overpayment").

---

[1]     While the record does not conclusively establish that
Santiago signed the agreement in Georgia, there appears to be no
dispute that he did not travel to New Hampshire to sign it.  The
first time he traveled to New Hampshire was to attend an annual
corporate event.  Vapotherm has not established where the
contract was signed on its behalf.

Vapotherm initially sued both Santiago and Vero Biotech. Both defendants timely moved to dismiss, asserting that this court lacked diversity subject matter jurisdiction.[2]  Defendants also suggested that the court lacks personal jurisdiction over them.  Accordingly, the parties were directed to engage in limited jurisdictional discovery.  After doing so, Vapotherm voluntarily dismissed its claims against Vero Biotech. Vapotherm then filed an amended complaint, advancing claims only against Santiago.[3]

---

[2]   Vero Biotech is a limited liability company organized in Delaware.  It is undisputed that, at the time Vapotherm filed its original complaint, diversity jurisdiction was lacking: at least one member of Vero Biotech is a New Hampshire resident. Under the "snapshot" or "time-of-filing" rule, that fact alone is, at least arguably, a basis for dismissing this action.  See J.M. Wagstaffe, Wagstaffe Prac. Guide: Fed Civil Proc. Before Trial, § 7.222 (2020) ("With few modifications and exceptions, diversity must exist at the time of filing.  Additionally, the facts existing at the time-of-filing generally determine the existence of diversity, whether subject matter jurisdiction is challenged at the outset or later in the case.").  See generally Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 573 (2004).  Such a dismissal would, however, require an inquiry into whether Vero Biotech is a dispensable party – an issue the parties have not addressed.  See generally Fed. R. Civ. P. 21. See also Cason v. Puerto Rico Elec. Power Auth., 770 F.3d 971, 976–77 (1st Cir. 2014).

[3]   Santiago contends that Vapotherm's effort to amend its complaint was improper because it was done without leave of the court and prior to resolution of the pending jurisdictional issues.  Because the court concludes that it lacks personal jurisdiction over Santiago, it need not resolve that issue. Even considering the allegations in the amended complaint as though it had been properly filed, the resolution of Santiago's motion to dismiss would be the same.

II.  Santiago's Contacts with New Hampshire.

     At all relevant times, Santiago has resided in Georgia.

Vapotherm interviewed (and eventually hired) Santiago as an

account manager for its Georgia territory.  Those interviews

took place in Atlanta and Chicago.  Santiago's work for

Vapotherm was based exclusively in the Southeast (Georgia and

Florida).  His direct supervisor was located in South Carolina,

and his supervisor's supervisor was located in Illinois.

Santiago Deposition (document no. 32-3) at 55.  As noted above,

Santiago executed the Non-solicitation Agreement in a state

other than New Hampshire (likely Georgia).


     The Non-solicitation Agreement's choice of law provision

states that it shall be governed not by New Hampshire law, but

rather by the laws of Maryland.  Also relevant to the court's

"foreseeability" inquiry is the fact that the agreement does not

have a forum selection clause, nor does it suggest that Santiago

has waived any objection to the courts of New Hampshire

exercising personal jurisdiction over him.


     During the course of his four years in Vapotherm's employ,

Santiago travelled to New Hampshire annually for a corporate

event.  He made a few other visits as well.  In total, he

estimates that he visited Vapotherm's corporate headquarters in

New Hampshire between five and seven times.  Santiago Deposition
at 25.  He communicated with personnel at Vapotherm's New
Hampshire headquarters infrequently, perhaps once a month –
typically to have someone in customer support process things
like return shipping labels or purchase orders.  Id. at 49-52.
He would also be in touch with Vapotherm's human resources
department at the late stages of hiring a new person to his
sales team.  Id.  Vapotherm paid Santiago from its payroll
accounts which are managed in New Hampshire.

In or around the end of 2019, Vero Biotech's CEO, Brent
Furse, contacted Santiago through Linked-In and said he would
like to meet.  There had been no prior communication between the
men, but Santiago assumed that Furse was interested in hiring
him.  Id. at 62-63.  Santiago subsequently left Vapotherm and,
in February of 2020, he joined Vero Biotech in a sales position
titled "Regional Engagement Director."  Id. at 8.

III. The Merits of Vapotherm's Claims.

It is necessary to briefly touch upon the merits of
Vapotherm's claims – all of which are based upon the assertion
that Santiago violated his Non-solicitation Agreement by
recruiting Lonsway, Wong, and Philpot away from Vapotherm.
Evidence developed during the limited discovery process

supporting those claims is, at best, weak.  Such merits evidence

is relevant to the court's jurisdictional inquiry because part

of that analysis requires a determination of whether Santiago's

activity in this forum was instrumental either in the formation

of the Non-solicitation Agreement or its breach.  See Adelson,

510 F.3d at 49.  With regard to Vapotherm's tort claims, the

court must determine whether Vapotherm has demonstrated that its

injury would not have occurred "but for" Santiago's forum-state

activity and that his conduct in this state gave rise to

Vapotherm's tort causes of action.  See Massachusetts Sch. of L.

at Andover, 142 F.3d at 35.  Given the absence of significant

evidence of either, the case for exercising personal

jurisdiction over Santiago in this forum becomes less

compelling.


     Santiago testified that he was well aware of his

contractual obligation not to solicit Vapotherm employees and he

(and Vero Biotech) took steps to insure that he did not breach

that obligation.  See, e.g., Santiago Deposition at 84

(testifying that when Mr. Philpot reached out to him and seemed

to be inquiring about Vero's hiring process, Santiago told him

that he could not be involved in any way with such matters); id.

at 84-85 (testifying that he notified his supervisor that he

could not be part of "any of the hiring process" and asked that

he "be 'fire-walled' from any communication with [the hiring department/ process], . . . . and any of the Vapotherm candidates that may apply to our company while this agreement is in place."). See also id. at 90 (stating that when Philpot texted him, Santiago "felt like he was fishing for information based on his application with Vero." Santiago testified that he told Philpot that he couldn't help him, that Philpot should "cease and desist" any further communications, and he should direct his inquiries directly to human resources); id. at 95 (stating that he had not communicated with Lonsway, Wong, or Philpot for any reason – other purely private matters, like to wish them well – since he left Vapotherm and joined Vero Biotech).

Santiago's testimony is supported by the deposition testimony of Vero Biotech's Vice President of Customer Engagement, who was involved in hiring Lonsway, Wong, and Philpot. See Deposition of Michelle Nickolo, (document no. 32-2) at 123 (testifying that Santiago had no involvement in the recruiting or hiring of Lonsway, Wong, or Philpot; only after Vero Biotech decided to extend offers of employment was Santiago asked if he thought the men would be "good fits" for Vero Biotech); id. at 125 (testifying that when Vero Biotech launched a new product and began expanding and hiring new employees,

Santiago immediately disclosed to her that he had a non-solicitation agreement with Vapotherm and made it "very clear" that "he could not solicit any Vapotherm employees himself"); id. at 127 (testifying that Santiago "wasn't involved in any solicitation or anything" to do with the hiring of Lonsway, Wong, or Philpot).

Santiago's testimony is also supported by that of both Benjamin Lonsway and Ryan Philpot (Vapotherm elected not to depose Kurt Wong). See Deposition of Ryan Philpot (document no. 32-4) at 46-47 (testifying that when he texted Santiago to inquire generally about employment opportunities, Santiago responded by telling Philpot that he could not talk about it, to "cease and desist," and that any contact with Vero Biotech would have to be through its CEO, Brent Furse); id. at 47-48 (testifying that after he received the "cease and desist" text message from Santiago, he had no further contact with Santiago); id. at 53-54 (testifying that Santiago never recruited him to join Vero Biotech, nor did he ever encourage him to join Vero Biotech, nor did he encourage Philpot to leave Vapotherm). See also Deposition of Benjamin Lonsway (document no. 32-5) at 37 (testifying that Santiago did not communicate with Lonsway or in any way to encourage Lonsway to apply for a position at Vero Biotech); id. at 55 (stating that he first became interested in

Vero Biotech after learning that Santiago was going to work there and he did "some investigative work – just kind of Googled" Vero Biotech.  Then, he met an employee of Vero Biotech at a conference and learned about the company from him); id. at 36, 82-83 (testifying that once he became interested in working at Vero Biotech, the only conversations he had with Santiago were of a personal nature, regarding Lonsway's purchase from Santiago of a dog for his children); id. at 97 (testifying that he never spoke with Santiago "about the process [he] was going through or [that he] was seeking employment with Vero").

In short, despite having deposed the major witnesses likely to have evidence supporting its claims, Vapotherm has pointed to no substantive evidence, or reasonable inferences, that would suggest that Santiago's alleged conduct (whether tortious or in breach of contract) actually occurred.  And, more importantly for the court's jurisdictional analysis, Vapotherm has pointed to no evidence linking Santiago's alleged wrongful conduct – that is, the improper solicitation of Lonsway, Wong, and Philpot – to this forum.

**Discussion**

I.   Vapotherm's Argument.

In support of its assertion that the court may properly
exercise specific personal jurisdiction over Santiago, Vapotherm
points to the following:

1.   Santiago was employed by and entered into a
     contract with Vapotherm, which is headquartered
     in New Hampshire;

2.   Santiago traveled to New Hampshire between five
     and seven times during the course of his four-
     year employment;

3.   While employed by Vapotherm, Santiago would
     "infrequently" – perhaps once a month - email
     employees in technical support or human resources
     at Vapotherm's New Hampshire headquarters
     regarding issues related to his employment (e.g.,
     technical support, final hiring approvals, etc.).

4.   "Santiago executed the [Non-solicitation]
     Agreement knowing he was forming a relationship
     with a New Hampshire based company."  Plaintiff's
     memorandum (document no. 34) at 13.

5.   "Santiago's breach of his employment contract
     with Vapotherm . . . [is] directly related to and
     arise[s] from [his] solicitation and hiring of
     Philpot, Wong, and Lonsway while they were
     employees of a New Hampshire company."  Id. at 12
     (emphasis supplied).

Thus, says Vapotherm, Santiago's "contacts with New Hampshire,
through [his] direct communications with Vapotherm and through
[his] solicitation of Vapotherm's employees, gives rise to
jurisdiction over [Santiago] in New Hampshire."  Id. at 14.

Even viewed in their totality, however, the factors identified by Vapotherm in support of exercising specific personal jurisdiction over Santiago are not terribly compelling. This is particularly true because an essential element of Vapotherm's argument is the claim that Santiago wrongfully solicited Vapotherm's employees, causing Vapotherm to suffer injury in New Hampshire – a claim for which there is little, if any, record evidence.

II.  <u>Santiago's Response</u>.

On the other hand, several factors support Santiago's assertion that it would be inconsistent with principles of due process and fundamental fairness to exercise specific personal jurisdiction over him in this forum with regard to this complaint.

A.  <u>The Non-Solicitation Agreement</u>.

The Non-Solicitation Agreement itself – which was drafted by Vapotherm - gives Santiago scant notice that he might be subject to the jurisdiction of New Hampshire courts if a dispute under that contract should arise. The choice of law clause provides that the agreement shall be "governed by and construed in accordance with the internal laws of the State of Maryland" – not New Hampshire.  <u>Id</u>. at para. 10.  Moreover, the agreement

lacks a forum selection clause or any other provision that might arguably give Santiago notice that he was subjecting himself to (and waiving any objection to) the personal jurisdiction of courts within this forum. Had Vapotherm wished to make clear its apparent desire to litigate claims under the Non-solicitation Agreement in New Hampshire, it could have easily included such provisions. It did not. See generally Adams v. Adams, 601 F.3d 1, 8 (1st Cir. 2010) (noting that the absence of a choice of law provision in a promissory note weighed against finding that the defendant had purposefully availed himself of the benefits and protections of Massachusetts law). See also CVS Pharmacy, Inc. v. Brown, No. CV 21-070 WES, 2021 WL 807666 (D.R.I. Mar. 3, 2021) (providing a comprehensive discussion of jurisdictional issues in cases involving in-forum employers suing foreign employees for breach of their employment contracts).

B.   Contract Formation.

The circumstances surrounding formation of the Non-solicitation Agreement do not counsel in favor of exercising personal jurisdiction over Santiago. Details are scarce, but the record does reveal that an employment recruiter contacted Santiago and connected him with Vapotherm. Santiago Deposition at 21. It does not appear – and Vapotherm certainly has not

demonstrated – that Santiago reached out to Vapotherm seeking employment by a company he knew was headquartered in New Hampshire. See generally Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999) ("Without evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship - say, by solicitation - the mere fact that the defendant willingly entered into a tendered relationship does not carry the day.") (citations omitted). Indeed, Santiago did not even travel to New Hampshire for any of his job interviews. His preliminary interview took place in Atlanta. A follow-up interview took place in Chicago, after which Vapotherm extended an offer of employment. And, as noted earlier, Santiago did not sign the Non-solicitation Agreement in New Hampshire. Cf. Adelson, 510 F.3d at 50 (finding that the "relatedness" element was met because the employment contract at issue "was formalized and entered into during [defendant's] December 5, 1995 trip to Massachusetts").

C.    Santiago's Contacts with New Hampshire.

Vapotherm hired Santiago as a regional business director, for markets in Georgia and Florida. Santiago Deposition at 31. The members of the sales team he supervised were all based in that region; not one was a resident of New Hampshire, nor did

any serve a territory that included New Hampshire. Santiago's immediate supervisor, Jeff Romfo, was based in Charleston, South Carolina. Romfo, in turn, reported to David Bluin, who was based in Chicago, Illinois. Santiago Deposition at 55-56. Santiago's actual contacts with this forum were limited and infrequent. None of those facts suggests that Santiago purposefully availed himself "of the privilege of conducting activities in [New Hampshire], thereby invoking the protections of [its] laws and making [his] involuntary presence before the state's courts foreseeable." United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1089. See generally Sawtelle, 70 F.3d at 1394 (an attorney's "mere act of agreeing to represent (and then representing) an out-of-state client, without more, does not suffice to demonstrate voluntary purposeful availment of the benefits and protections of the laws of the client's home state.").

D. Conduct Allegedly in Breach of the Agreement.

Finally, Santiago's alleged conduct that Vapotherm says amounted to a breach of the Non-solicitation Agreement and tortious interference with contractual relations all took place (if at all) outside of New Hampshire. Even if Vapotherm could supportably claim that Santiago had any improper contact with Lonsway, Wong, and/or Philpot, that conduct plainly occurred

well outside of this state, since all four men live and work elsewhere.

On balance, then, Vapotherm has not shown that any of the relevant jurisdictional factors – relatedness, purposeful availment (also called "minimum contacts"), or reasonableness counsels in favor of exercising specific personal jurisdiction over Santiago.

## Conclusion

Santiago's contacts with this forum were, at best, meager. He did not initiate contact with Vapotherm and, when Vapotherm did extend a job offer to Santiago, he signed the Non-solicitation Agreement in another forum.  The agreement itself does not purport to be governed by New Hampshire law, nor does it have a New Hampshire forum selection clause.  As an employee of Vapotherm, Santiago's contacts with New Hampshire were limited and infrequent.  His day-to-day work on behalf of Vapotherm took place in Georgia and Florida, and he was supervised by, and reported to, Vapotherm employees who were located in South Carolina and Illinois.

Two of the three men Santiago is alleged to have "recruited" in violation of his Non-solicitation Agreement

testified in clear and unwavering terms that Santiago did no such thing (Vapotherm elected not to depose the third). Michelle Nickolo, Vero Biotech's Vice President of Customer Engagement, testified that Santiago played no role whatsoever in recruiting or hiring those men.  Indeed, she testified that Santiago notified Vero Biotech of his Non-solicitation Agreement with Vapotherm and made clear that he could not (and would not) participate in any way to recruit or hire Vapotherm employees.

For its part, Vapotherm points to nothing but implausible and untethered inferences to argue otherwise.  It has pointed to no evidence that Santiago breached of his Non-solicitation Agreement or engaged in tortious conduct toward Vapotherm in this forum (or anywhere else).

Viewed in their totality, then, the facts of record simply do not support even the inference that Vapotherm has carried its burden to show that the court may properly exercise personal jurisdiction over Santiago.  Instead, an examination of the relevant jurisdictional factors - relatedness, purposeful availment, and reasonableness – reveals that exercising such jurisdiction would be inconsistent with the Due Process Clause of the Fourteenth Amendment.  See generally CVS Pharmacy, Inc. v. Brown, 2021 WL 807666, at *4-5.

For the foregoing reasons, as well as those set forth in Santiago's memoranda (document nos. 32 and 38), the motion to dismiss (document no. 31) is granted, on grounds that the court lacks personal jurisdiction over Santiago. All other pending motions are denied as moot. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 24, 2021

cc: Counsel of Record